Edell Jackson #25326

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

RECEIVED BY MAIL
SEP 20 2021
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| | |
|---|---|
| Edell Jackson, | Case No._____ |
| Plaintiff, | 21-cv-2072 DSD/ECW |
| v. | **CIVIL RIGHTS CONMPLAINT** |
| Brooklyn Center Police Dept., | **(§ 1983)** |
| Jake Wilkins, Stephen Paster, | Trial by Jury Demanded |
| Joel Iverson, Cooper Gauldin | |

COMES NOW Edell Jackson #25326, plaintiff *pro se,* who presents the following civil rights complaint and claim for compensatory, declaratory, and injunctive relief as follows TO WIT:

### I   INTRODUCTION

1. This action places before the Court a lawsuit involving the select individuals of the Brooklyn Center police dept. in their capacities as well as the police department itself which is responsible for their training and procedures.

    This complaint alleges that:
    - Mr. Jackson was of no threat to any officer or public figure to warrant used of "deadly force" by officers when they tazed him multiple times and beat him in a snow bank
    - Mr. Jackson was tased an excessive amount of times to which it became a "life threatening action"
    - Police officers failed to follow protocol in their "senseless attack" of Mr. Jackson and therefor the tazing of Mr. Jackson and the brutal beating of Mr. Jackson was unconstitutional.
    - Police were deliberately indifferent to Mr. Jackson's constitutional rights as a civilian to be free from excessive force, and senseless police brutality.
    - Police wrongfully searched Mr. Jacksons vehicle, and wrongfully removed a phone belonging to Mr. Jackson with out a search warrant or any authority to do so

## Statement of the Facts

On Jan. 14 2021 Mr Jackson was sitting in his truck at the location of 4050 Lyndale and has just gotten into and started his vehicle ( a truck )  when he was suddenly surrounded by multiple police vehicles. Mr. Jackson had not started driving the vehicle yet, and was just taking his truck out of park to drive. He had no knowledge of officers intent to arrest him, neither did he have any inclination he had a warrant for his arrest.  Mr. Jackson was struck on of the driver side of the vehicle smashing his drive side door.  The truck was not yet in motion, and police did not first allow Mr. Jackson a chance to exit his vehicle.  Police had NOT TURNED ON THEIR POLICE LIGHTS so Mr. Jackson did not know he would need to deal with any cops at that moment.  It was a surprise attack.  At no time did Mr. Jackson attempt to drive or FLEE the scene.

Mr. Jackson's truck was hit by a police vehicle on the driver side door and pushed in the showy embankment and Mr. Jackson, shocked, simply remained in his truck, absorbing what had happened to him.  The police reports would later call this a "box maneuver" yet nothing in the police report will state **why,** with SEVEN COPS,  there was a need to SMASH Mr. Jackson's truck rather then surround it, and allow him to peacefully be taken away.     The collision occurred by a police officer named **Jake Wilconsons Badge # 336** who, rather then turn his lights on and request Mr. Jackson get out of the truck, took it upon himself to push the truck into a snowy embankment by colliding with it.

As Mr. Jackson had not even put his truck into drive yet, the obviousness of why this police officer felt the need to collide with Mr. Jackson's truck remains a mystery as there were seven police cars to safely make sure his car would not go any where.

## First Tazing

Police continued to treat the apprehension as a hostile situation and officers immediately descended upon  Mr. Jackson's truck with service arms drawn and ready to fire.   Officers where

screaming MULTIPLE COMMANDS to Mr. Jackson such as "get out of the car" (**as Mr. Jackson was calmly trying to unfasten his seat belt**) "he's reaching for his gun" "put your hands up". It was a COMPLETELY CAOTIC situation for Mr. Jackson.

Mr. Jackson immediately complied to commands, put his HAND UP and exited the vehicle. Upon his exit, with his HAND UP, Mr. Jackson was immediately tazed by **Unknown Officer #1** with out cause.

### Three More Tazings

Mr. Jackson, now quite literally "shocked" by police conduct, fell to the snow and lost his coat, disorientated on what he should do while multiple cops screamed "put your hands up" Mr. Jackson put his hands up and repeatedly begged officers "DON'T SHOOT ME DON'T SHOOT ME!" yet as Mr. Jackson walked into a police **"firing squad"** of officers while Mr. Jackson's hands were at all times up, and he is screaming "don't shoot me!" "don't shoot me!" while waiting to follow orders yet he was repeatedly shot over and over by multiple police service taze weapons, in a FIRING SQUAD fashion by Seven surrounding police officers including officers as follows:

1. Joel Iverson    badge # 32136
2. Cooper Gauldin   badge # 32188
3. Stephen Paster   badge # 32134
4. Jake Wilkins   badge # 32170.

Mr. Jackson, after a horrific FOUR TAZINGS by this police mob, unbelievably was able to continue to comply with the order to keep his hands UP and not knowing what to do in such a chaotic scene and not getting any human treatment attempted to distance himself from the unrelenting tazing of the police by walking away from the mob of police officers. At no time did Mr. Jackson ever "flee or run, or attempt to run" video evidence CLEARLY shows his HANDS UP and he is walking to where police are." **SEE VIDEO 32134 (police car passenger video dash cam) at 17:00:00 – 17:00:28**

## BRUTAL BEATING THAT FOLLOWED TAZINGS

Mr. Jacksons, after initial tazings FOUR different times, stumbled across the snow bank, clearly disorientated by tazers, and then was tackled by EIGHT different cops and was randomly beat to a bloody pulp. Mr. Jackson endured a horrific and brutal episode in the short time it took him to exit his vehicle and put his hands up as he was told.

Mr. Jackson submits these following exhibits of evidence for the Court as VISUAL AIDS showing that he was severely beaten. SEE EXHIBITS 1-3

### Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. **Ward v. Smith**, 721 F.3d 940, 942 (8th Cir. 2013). See also **Stevens v. Redwing**, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim...and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." **Patterson v. Kelley,** 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. **Phillips v. Jasper Cty. Jail**, 437 F.3d 791,794 (8th Cir. 2006).

## Jurisdiction of this Section §1983 Claim to Request Monetary Relief

Local government entities, such as counties or cities, can be sued directly under §1983 for monetary or equitable relief where it is alleged that the entity's official or unofficial policy, custom, usage, or practice that is the "moving force [behind] the constitutional violation." **Monell**, 436 U.S. at 690, 694. **A plaintiff can establish this "municipal liability" by:**

(1) alleging that an officer "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity";

(2) establishing that the officer who committed the constitutional tort "was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy";

(3) proving that an official "with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." **Gillette v. Delmore**, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

## Affiant Has a Constitutional Right And Merit to File This 1983 Claim

To state a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must allege that:

(1) a particular defendant,

(2) acting under color of state law,

(3) deprived plaintiff of a right guaranteed under the U.S. Constitution or a federal statute.
SEE **West v. Atkins**, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Suits against government officials under § 1983 in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." **Kentucky v.**

(4) **Graham**, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." **Johnson v. Duffy,** 588 F.2d 740, 743 (9th Cir. 1978). Section 1983 requires that plaintiffs show that a person's act or omission constituted a breach of duty that proximately caused the alleged constitutional injury. **Mendez v. Cty. of Los Angeles**, 897 F.3d 1067, 1074 (9th Cir. 2018).

### Statute of Limitations of This Claim

The statute of limitations for § 1983 claims in Minnesota is six years. **Egerdahl v. Hibbing Cmty. Coll.**, 72 F.3d 615, 618 n.3 (8th Cir. 1995). "Section 198 claims accrue 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" **Humphrey v. Eureka Gardens Pub. Facility Bd**., 891 F.3d 1079, 1081-82 (8th Cir. 2018) (quoting Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)).

**Plaintiff brings these claims against defendants in both their individual and official capacities.** **White v. Jackson**, 865 F.3d 1064, 1075 (8th Cir. 2017) a "suit against a public employee in his or her official capacity is merely a suit against the public employer." **Johnson v. Outboard Marine Corp**., 172 F.3d 531, 535 (8th Cir. 1999). See also **Brewington v. Keener**, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); **Kelly**, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and **Elder-Keep v. Aksamit**, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

<u>**Plaintiff Rightfully Contest Violation Fourth and Fourteenth Amendments to the United States Constitution**</u>

Under the Fourth Amendment, a police officer may be held liable for failing to intervene to prevent the **unconstitutional assault by another officer.** <u>Nance v. Sammis</u>, 586 F.3d 604, 612 (8th Cir. 2009). To establish a failure to intervene claim, however, the plaintiff must show that the officer observed or had reason to know that **a constitutional violation was occurring**. <u>Hollingsworth v. City of St. Ann</u>, 800 F.3d 985, 991 (8th Cir. 2015). See also <u>Krout v. Goemmer</u>, 583 F.3d 557, 565 (8th Cir. 2009) (explaining that police officer had duty to intervene to prevent the excessive use of force where the officer was aware of the abuse and the duration of the episode was sufficient to permit an inference of tacit collaboration); and <u>White v. Jackson</u>, 865 F.3d 1064, 1081 (8th Cir. 2017) (stating that in Fourth Amendment **excessive force context**, a police officer may be liable for failing to intervene "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration").

To prevail on a section 1983 claim based on the Fourth Amendment, the Plaintiff must show that the Defendants' conduct was an unreasonable seizure. (citing Sandoval v. Cty. of Sonoma, 912 F.3d 509, 515 (9th Cir. 2018)).

<u>**Mr. Jackson was NO threat to police or civilians**</u>

Now applying the <u>**Graham**</u> factors to the facts, the details paint a picture of Officers not apparently suspecting Mr. Jackson of any particular crime or offense and responding with <u>**potentially deadly force**</u>, even though Mr. Jackson posed no immediate threat to the Officers or to any other person. These first three <u>**Graham**</u> factors all tend to suggest that stated officers behaved unreasonably. The most important factor, that Mr. Jackson kept his hands up, and tried to duly follow police commands, yet walked into a FIRING SQUAD after he exited his truck that was parked in the snow bank, suggest use

of deadly force by multiple tazings was unreasonable. Mr. Jackson, under the facts alleged in the police reports, posed absolutely no danger to anyone. He was driving his truck, and obeying all laws and ordinances. When policemen spotted him they pushed his truck into a snowy embankment but Mr. Jackson did not attempt to used the vehicle to try and flee, he unbuckled his seat belt once the police had hit his vehicle, then followed instructions to get out of his vehicle. Mr. Jackson posed no danger to police servicemen or to the public, let alone a "significant threat of death or serious physical harm," to police officers. **Garner**, 471 U.S. at 3. Yet Mr. Jackson was tazed immediately upon exiting his vehicle, while his hands are CLEARLY VISIBLE for police to see in the air. He was disorientated and fell in the snow, loosing his jacket, and when he stood back up with his hands CLEARLY IN THE AIR he walked into a FIRING SQUAD where he was again tazed THREE more times by a circle of 7 police men who CLEARLY had him surrounded and could have easily put handcuffs on him and escorted him to their vehicle. Yet instead they tazed and beat Mr. Jackson to a bloody pulp in a snowy embankment as though he were a wild animal.

## CONCLUSION

Mr. Jackson has adequately pleaded all the allegations supporting his claim against Defendants for excessive force, failure to intervene, and supervisory liability under Fourth and Fourteenth Amendments to the United States Constitution.

Under the Fourth Amendment, a police officer may be held liable for failing to intervene to prevent the unconstitutional assault by another officer.

Mr. Jackson proves there was a failure to intervene the unconstitutional assault by officers in violation of 42 U.S.C. § 1986 and that the officers observed or had reason to know that a constitutional violation was occurring and that they were outside the scope of their training in their actions toward Mr. Jackson while apprehending him in the most disgraceful and violent way possible.

For the forgoing reasons under Fourth and Fourteenth Amendments to the United States Constitution and supplemental claims of assault under state law, and for the reasons that these individuals failed to follow the protocol of their training as described by EXHIBIT evidence of the proper police department conduct (which will yet be submitted) in apprehending a civilian that is not resisting arrest, and is compliant,   Mr. Jackson is entitled to be granted monetary relief in the sum of $500,000 per officer responsible for his injurious, emotionally traumatic horror he endured as a civilian being brutally mistreated and then unjustifiably beat by said officers which actions "shocked the conscience" of Mr. Jackson.

Said officers in this suit failed in their civil duty in light of training procedures that had been put in place to protect Mr. Jackson and civilians like him from just this kind of brutal excessive force, which was with out cause, unprovoked, and wrought by trigger happy police officers that "mischaracterized him as a fugitive and flee'er of police based on nothing more then hearsay".

Then these said officers set up and executed a **<u>"firing squad"</u>** which Mr. Jackson **"walked into"** while Mr. Jackson attempted exit his vehicle and duly follow all police instructions yet these officers (without apparently suspecting Mr. Jackson of any particular crime or offense and responding with potentially deadly force) were determined to treat Mr. Jackson as a terrorist of the worst kind, with out any show of compassion, humanism, or following proper police policy of conduct, and apprehended

him in the worst possible way, as a wild animal, with total disregard for any shred of decency toward him as a human, which resulted in a brutal beating of Mr. Jackson, after a horrific experience of being tazed FOUR different times while surrounded by 7 armed officers against Mr. Jackson who was unarmed and kept his hands CLEARLY in the air at all times after exiting his vehicle, yet continued to get SHOT by trigger happy policemen who were unrelenting.

Let, therefore the Court so grant that Mr. Jackson be rewarded the said relief requested in the total amount of $2,000,000 against the *Brooklyn Center Police Dept.* and it's acting officers stated in this 1983.

FURTHER YOUR AFFIANT SAYETH NOT

DATE:                                    Respectfully submitted,

9/3/2021                                 _____ CIVIL RIGHTS
                                         Edell Jackson

                                         Russell Leo Bartell  9-4-2021

