UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Edell Jackson,                                        Case No. 21-cv-2072 SRN/HB

                Plaintiff,

vs.

City of Brooklyn Center, et al.,

                Defendants.

---

**BROOKLYN CENTER DEFENDANTS' ANSWER TO THE COMPLAINT, AMENDED COMPLAINT, AND SECOND AMENDED COMPLAINT**

---

COME NOW the City of Brooklyn Center and its Police Officers Ryan Soliday, Jake Wilkins, Stephen Pastor, Joel Iverson, Cooper Gauldin, and Kate Deering, for their Answer to Plaintiff's Complaint, Amended Complaint, and Second Amended Complaint ("Complaints") state and allege as follows:

1.      Unless hereafter admitted, qualified or otherwise answered, these answering parties deny each and every thing, matter and particular alleged in Plaintiff's Complaints.

2.      These answering parties specifically deny Plaintiff has stated a cognizable claim for relief under 42 U.S.C. §§ 1983 or 1988 or Minnesota common law and, further, deny Plaintiff sustained any deprivation of rights under the

Fourth Amendment or any other state or federal statutory or constitutional injuries as alleged in Plaintiff's Complaints.

3.     These answering parties affirmatively allege at all times material hereto, they were acting in their official capacities as Brooklyn Center employees and performing discretionary acts in the scope of their duties with a good faith belief their conduct was lawful, constitutional, proper and pursuant to probable cause.

4.     These answering parties affirmatively allege Plaintiff's actions asserted against them are official capacity actions only.

5.     These answering parties affirmatively allege Plaintiff's Complaints fail to state a cause of action for claims upon which relief can be granted.

6.     These answering parties affirmatively allege Plaintiff's claims are barred by the legal doctrines of qualified, statutory, and official immunity.

7.     These answering parties affirmatively allege Plaintiff's claims are barred, in whole or part, based on *Heck v. Humphrey*, 512 U.S. 477 (1994).

8.     With respect to the allegations in the Complaints, these answering parties submit the audio and video of this entire January 14, 2021 incident involving the arrest of Plaintiff after he fled from the officers in his truck and on foot, including the graphic description Plaintiff's girlfriend voluntarily provided regarding Plaintiff's violent assault of her and his discharge of a firearm at her.

These events were captured by the squad car and body worn cameras of eight

separate police officers. These videos are attached hereto as follows:

Exhibit 1: Officer Ryan Soliday's body worn camera footage;
Exhibit 2: Officer Ryan Soliday's squad car camera footage;
Exhibit 3: Officer Jake Wilkins' body worn camera footage;
Exhibit 4: Officer Jake Wilkins' squad car camera footage;
Exhibit 5: Officer Iverson's body worn camera footage;
Exhibit 6: Officer Iverson's squad car camera footage;
Exhibit 7: Sergeant Stephen Pastor's body worn camera footage;
Exhibit 8: Sergeant Stephen Pastor's squad car camera footage;
Exhibit 9: Officer Cooper Gauldin's body worn camera footage;
Exhibit 10: Officer Cooper Gauldin's squad car camera footage;
Exhibit 11: Officer Kate Deering's body worn camera footage;
Exhibit 12: Officer Kate Deering's squad car camera footage;
Exhibit 13: Officer Michael Bickel's body worn camera footage;
Exhibit 14: Officer Michael Bickel's squad car camera footage;
Exhibit 15: Officer Mackenzie Smith's body worn camera footage;
Exhibit 16: Officer Mackenzie Smith's squad car camera footage.

These answering parties admit to the accuracy of the contents of these videos and

submit the videos speak for themselves, and specifically deny all allegations and

self-serving mischaracterizations not supported by the videos[1] and put Plaintiff

to his strict burden of proof.

9.      These answering parties note the requirements of Federal Rule of

Civil Procedure 11(b) regarding representations to the court and place Plaintiff

---

[1] On March 9, 2022, Plaintiff recounted many of the events alleged in the Complaint during his own criminal trial. *See United States of America v. Edell Jackson*, Case No. 0:21-cr-00051-DWF-TNL. Although he was under oath, Plaintiff continued to adhere to a narrative of the incident that contradicted the body camera footage at nearly every turn.

and his counsel on notice that factual contentions contained in the Complaints that find no evidentiary support because they are directly contradicted by the squad car and body worn camera videos must be withdrawn or corrected.

10.     With respect to paragraphs 1 through 7, these answering parties deny these allegations, put Plaintiff to his strict burden of proof, and specifically submit the following, as evidenced by squad car and body camera video: On January 14, 2021, these answering parties received a report that Plaintiff had just committed a brutal domestic assault of his girlfriend. Plaintiff reportedly punched her several times and shot at her with a revolver. The victim provided the officers with Plaintiff's location and a description of his person and vehicle and reported he had two handguns with him. The victim also reported Plaintiff had a felony warrant for his arrest for fleeing the police in a motor vehicle, which the officers confirmed. When the officers located Plaintiff's vehicle outside an apartment complex, they coordinated a high-risk stop with the Minneapolis Police Department and the Hennepin County Sheriff's Office to arrest Plaintiff. When an individual matching Plaintiff's description walked to Plaintiff's vehicle, got inside, and started the engine, the officers drove to the scene to conduct the stop. When the officers arrived, they activated their squad lights and shined a spotlight on the vehicle's windshield. In response, Plaintiff immediately put the vehicle in reverse and attempted to escape. To prevent his escape, officers

rammed into Plaintiff's vehicle, pushing it further into a snowbank. Unable to drive away, Plaintiff ignored commands to get out of the vehicle or put his hands up. When Plaintiff finally exited the car, he immediately turned and ran away from the officers and did not put his hands in the air. After falling and losing his jacket in the process, Plaintiff ignored orders to stay on the ground and instead immediately got up and ran between several officers. Two officers attempted to Tase Plaintiff, but he continued to sprint away across the parking lot and through an alley between two apartment buildings. Officers pursued Plaintiff, who continued to ignore commands and did not stop until he was tackled to the ground by one of the officers. Plaintiff continued to struggle with the officers on the ground and kept reaching under his body at his waistline, leading the officers to believe he was retrieving his firearm. To protect themselves and control Plaintiff, the officers struck Plaintiff and used a Taser to drive stun him until he stopped resisting and they could see his hands again. After Plaintiff was handcuffed and detained, officers found a handgun in the pocket of his jacket he had dropped.[2]

---

[2] Plaintiff was **criminally convicted** on March 11, 2022 for knowingly possessing **this** firearm as a felon in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2). *See United States of America v. Edell Jackson*, Case No. 0:21-cr-00051-DWF-TNL.

11.     With respect to paragraphs 8 and 9, these answering parties are without sufficient information to admit or deny and, therefore, deny and put Plaintiff to his strict burden of proof.

12.     With respect to paragraph 10, these answering parties admit these allegations.

13.     With respect to paragraph 11, the Brooklyn Center Police Department is not a legal entity subject to suit.

14.     With respect to paragraphs 12 and 13, these answering parties deny these allegations and put Plaintiff to his strict burden of proof.

15.     With respect to paragraph 14, these answering parties admit these allegations.

16.     With respect to paragraphs 15 to 68, these answering parties admit Officers Ryan Soliday, Jake Wilkins, Stephen Pastor, Joel Iverson, Cooper Gauldin, and Kate Deering were acting in their official capacities and under color of law as Brooklyn Center Police Officers, but specifically deny the allegations Plaintiff sustained any deprivation of rights under the Fourth Amendment or any other state or federal statutory or constitutional injuries and put Plaintiff to his strict burden of proof.

17.     With respect to paragraphs 69 through 89, these answering parties submit these allegations are not directed to them, are unrelated to them, are

irrelevant to the specific claims alleged by Plaintiff against them, and no answer is required. To the extent an answer is required, these answering parties are without sufficient information to admit or deny and, therefore, deny and put Plaintiff to his strict burden of proof.

18.     With respect to paragraphs 90 and 91, these answering parties admit federal questions should generally be resolved in federal court and that this incident occurred in the State of Minnesota; however, the incident did not rise to the level of a constitutional deprivation and, therefore, these answering parties deny the same and deny jurisdiction of this Court.

19.     With respect to paragraph 92, these answering parties admit Plaintiff had gotten into his truck in the parking lot at 4050 Lyndale Avenue and started the engine, and specifically submit, as evidenced by squad car and body camera video, the officers drove to the scene and arrived less than a minute later.

20.     With respect to paragraph 93, these answering parties deny these allegations and specifically submit the following as evidenced by squad car and body camera video: When the officers entered the lot where Plaintiff was located, they activated their squad car lights and shined a spotlight on his truck's windshield. Plaintiff's truck was parked and not moving at that time. Only after Plaintiff saw squad cars approaching with their lights on did Plaintiff suddenly attempt to flee by recklessly speeding in reverse and turning his truck to face the

alley exit as the officers continued their approach. Plaintiff crashed into the

snowbank and hit telephone pole support cables.

21.     With respect to paragraph 94, these answering parties deny these

allegations, put Plaintiff to his strict burden of proof, and submit Plaintiff's

knowledge of the valid felony arrest warrant for fleeing in a motor vehicle is

irrelevant to the applicable legal analysis. Further, his lack of concern following

his reported violent assault of his girlfriend with a firearm hours earlier is very

telling. As such, when Plaintiff observed the officers in their squad cars with

their lights activated, he attempted to avoid arrest and to flee from the officers

when he sped backwards and crashed into a snowbank and telephone pole

cables, as evidenced in the below squad car video screenshot *(Exhibit 2, 16:59:53)*.



22.     With respect to paragraphs 95 through 97, these answering parties

deny Plaintiff's self-serving allegations and mischaracterizations and specifically

submit the following as evidenced by squad car and body camera video: After

Plaintiff had attempted to flee the police and had backed up into the snowbank

and cables at a high rate of speed, he attempted to turn the steering wheel and

put the truck into drive. Officer Wilkins used his squad car to bump Plaintiff's

truck's front right bumper at just 6 mph. A second later, Officer Soliday used his

squad car to drive Plaintiff's truck further into the snowbank by hitting the

truck's driver's door at 11 mph. These maneuvers by the officers, which were so

slow that none of the airbags in the involved vehicles deployed, prevented

Plaintiff from escaping in his truck or using it as a deadly weapon.

23.     With respect to paragraph 98, these answering parties are without

sufficient information to admit or deny and, therefore, deny and put Plaintiff to

his strict burden of proof.

24.     With respect to paragraph 99, these answering parties admit these

allegations, and specifically submit Plaintiff still chose to flee from the officers, as

evidenced by the squad car and body camera video.

25.     With respect to paragraphs 100 and 101, these answering parties

deny Plaintiff's self-serving mischaracterizations and allegations but admit

officers stood outside their squad cars and approached Plaintiff's vehicle with

their firearms readied while repeatedly ordering Plaintiff to get out of the car and

to keep his hands up, which he did not do.

9

26.     With respect to paragraph 102, these answering parties admit an officer said "he's reaching" because Plaintiff reached his hands toward the truck's center console.

27.     With respect to paragraphs 103 through 105, these parties deny these allegations and specifically submit the following: Ten seconds after Officer Soliday hit Plaintiff's truck, Plaintiff crawled over to the passenger seat, opened the door, jumped out, and immediately took off running away from the officers along the side of the truck to the back of the truck. Plaintiff never surrendered. Plaintiff did not put or keep his hands up upon exiting the truck or running alongside it as evidenced in the below body camera video screenshot. *(Exhibit 3, 5:00:08).*



28.     With respect to paragraphs 106 and 107, these answering parties deny these allegations and specifically submit Plaintiff fell and lost his coat when he attempted to jump over the snowbank while running from the officers.

29.     With respect to paragraphs 108 through 111, these answering parties deny these allegations and specifically submit the following as evidenced by squad car and body camera video: As soon as he fell, Plaintiff ignored repeated commands to stay on the ground, jumped up, and immediately took off running across the snow and alley toward the parking lot. While Plaintiff asked the officers not to hurt him and put his hands up for a few seconds, he continued to run through the line of officers issuing commands, which he ignored. At that time, Sergeant Pastor and Officer Gauldin fired their Tasers at Plaintiff's right and left side. However, neither Taser appeared to take hold or affect Plaintiff, who put his arms down and continued to run toward public apartment buildings, leaving all the officers behind him. While continuing to ignore commands, Plaintiff ran across the entire parking lot and ran with his hands down through the grass between the apartment buildings as evidenced in the below body camera video screenshots *(Exhibit 9, pt. 1, 5:00:14, 5:00:22)*.





30.     With respect to paragraphs 112 through 114, these answering parties

deny these allegations and specifically submit the following as evidenced by

squad car and body camera video: While Plaintiff was still ignoring commands

and running away from officers with his hands down, Officer Gauldin caught up

to Plaintiff and tackled him to the ground. When other officers caught up to

Officer Gauldin and Plaintiff, they assisted in restraining Plaintiff. Plaintiff

continued to ignore commands and actively resisted on the ground for approximately 13 seconds. He also attempted to put his hands beneath his stomach at his waistline, causing officers to think he was reaching for a weapon. When Officer Gauldin saw Plaintiff do this, he struck Plaintiff in the ribs and stomach three to four times until he stopped reaching for his waistline. When Officer Iverson saw Plaintiff do this, he struck Plaintiff in the midsection with his knees and fists twice until he saw Plaintiff's hands again. When Officer Wilkins saw this, he used his Taser to drive stun Plaintiff's buttocks until Plaintiff stopped resisting. Once Plaintiff stopped resisting, the officers did not strike or stun Plaintiff, but proceeded to handcuff him.

31.    With respect to paragraph 115, these answering parties deny leaving Plaintiff on the ground for several minutes, but admit they checked Plaintiff for weapons and found none. These answering parties specifically submit they later found Plaintiff's handgun in Plaintiff's jacket pocket.

32.    With respect to paragraph 116, these answering parties are without sufficient information to admit or deny what Plaintiff was feeling, and, therefore, deny and put Plaintiff to his strict burden of proof. These answering parties further submit that although Plaintiff said he could not breathe, he also stated that it was because he had bronchitis and was out of shape. These answering

parties also specifically submit they provided him oxygen and called an
ambulance.

33.    With respect to paragraph 117, these answering parties admit an
ambulance arrived at the scene but deny the remaining allegations and put
Plaintiff to his strict burden of proof. These answering parties specifically submit
Officers Gauldin and Wilkins rode in the ambulance with Plaintiff and removed
his handcuffs so he could lie on his back before transport.

34.    With respect to paragraph 118, these answering parties deny these
allegations and specifically submit Plaintiff's handcuffs were removed in the
ambulance before he was transported to the hospital.

35.    With respect to paragraph 119, these answering parties admit
Officer Wilkins took photographs of Plaintiff upon request but deny Officer
Wilkins evaded any areas of injury. These answering parties further submit
Officer Wilkins did not see any areas of injury.

36.    With respect to paragraphs 120 and 121, these answering parties
deny these allegations which, now, Plaintiff admits were blatantly false. These
answering parties specifically submit the following: Officer Deering assisted the
Hennepin County Crime Lab in processing the scene and found a handgun in the
pocket of Plaintiff's jacket. This handgun matched the model type provided by

the victim of the domestic assault as evidenced in the below body camera video screenshot.



*Exhibit 11, pt. 2C, 5:50:17.* A photograph from Plaintiff's cell phone also appears to show the gun found in his jacket. *See United States of America v. Edell Jackson,* Case No. 0:21-cr-00051-DWF-TNL, *Doc. 1-1, p. 4.*



A photograph from Jackson's phone, showing what appears to be the charged firearm.

*Id.* Because this firearm was found in his jacket, Plaintiff was criminally charged

in this Court, Case No. 0:21-cr-0051 (DWF/TNL) for possessing a firearm as a

felon in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2).

During the criminal trial on March 9, 2022, Plaintiff testified that the firearm was

his and that he had put it in his jacket that day. He admitted an officer had not

planted the gun in his jacket. Attached hereto as Exhibit 17 is a certified copy of

the transcript of Edell Jackson's jury trial testimony. On March 11, 2022, the jury

convicted Plaintiff of the offense.

37.     With respect to paragraphs 122 through 161, these answering parties

submit these allegations are irrelevant to the case at hand and do not require an

answer. To the extent an answer is required, these answering parties deny any

wrongdoing and deny any judicial determinations of wrongdoing and put

16

Plaintiff to his strict burden of proof. With respect to any paragraphs mentioning Brooklyn Center policy, these answering parties submit said policies speak for themselves.

38.    With respect to paragraphs 162 through 172, these answering parties deny these allegations against them and put Plaintiff to his strict burden of proof.

39.    With respect to paragraphs 173 through 178, these answering parties deny these claims for relief and deny any liability with respect to Plaintiff's claims.

40.    These answering parties deny the allegations in Count One of the Second Amended Complaint (paragraphs 179 to 184) and specifically deny violating Plaintiff's Fourth Amendment Rights and further deny use of excessive force.

41.    These answering parties deny the allegations in Count Two of the Second Amended Complaint (paragraphs 185 to 197) and specifically deny violating Plaintiff's Procedural Due Process Fourteenth Amendment Rights.

42.    These answering parties specifically deny the allegations in Count Three of the Second Amended Complaint (paragraphs 198 to 220) and specifically deny acting with deliberate indifference to the rights of suspects/detainees through any policy, custom, or practice.

43.     These answering parties deny the allegations in Count Four of the Second Amended Complaint (paragraphs 221 to 233) and specifically deny acting with deliberate indifference or failing to train.

44.     These answering parties deny the allegations in Count Five of the Second Amended Complaint (paragraphs 234 to 245) and specifically deny committing battery.

45.     These answering parties deny the allegations in Count Six of the Second Amended Complaint (paragraphs 246 to 256) and specifically deny committing the tort of negligence.

46.     These answering parties deny the allegations in Count Seven of the Second Amended Complaint (paragraphs 257 to 264) and specifically deny negligently inflicting emotional distress.

47.     These answering parties are without sufficient knowledge to form a belief as to the truth of Plaintiff's alleged damages and Prayer for Relief and, therefore, deny the same and demand strict proof thereof.

48.     These answering parties affirmatively allege Plaintiff's injuries and damages, if any, were caused, contributed to, or brought about by Plaintiff's own intentional or negligent act or the actions of those over whom the Brooklyn Center Defendants exercise no right of control and are not legally responsible.

49.     These answering parties deny punitive damages are actionable or available for this incident.

50.     These answering parties join in Plaintiff's request for a jury trial.

**WHEREFORE,** these answering parties pray Plaintiff takes nothing by this claim for relief herein; that these answering parties be given judgment against Plaintiff, dismissing Plaintiff's cause of action with prejudice; that these answering parties be given judgment for costs, disbursements and attorney's fees herein pursuant to 42 U.S.C. § 1988 and for such other relief as the Court may deem just and equitable.

Dated: March 29, 2022

s/Jason M. Hiveley
Jason M. Hiveley, #311546
Julia C. Kelly, #392424
Aaron M. Bostrom, #4017736
IVERSON REUVERS
9321 Ensign Avenue South
Bloomington, MN 55438
jasonh@iversonlaw.com
julia@iversonlaw.com
aaron@iversonlaw.com
(952) 548-7200

*Attorneys for City of Brooklyn Center Defendants*